UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FANGFANG XU,<br><br>      Plaintiff,<br><br>   -v.-<br><br>L. FRANCIS CISSNA, *Director of U.S. Citizenship and Immigration Services*, KIRSTJEN NIELSEN, *Secretary U.S. Department of Homeland Security*, THOMAS CIOPPA, *District Director of U.S. Citizenship and Immigration Services*,<br><br>      Defendants. | 19 Civ. 2584 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

  Plaintiff Fangfang Xu, a citizen of the People's Republic of China, applied for asylum here in 2015. Her application has not been adjudicated and remains pending. Plaintiff initiated this suit against L. Francis Cissna, the former Director of the United States Citizenship and Immigration Services (the "USCIS"); Kirstjen Nielsen, the former Secretary of the United States Department of Homeland Security; and Thomas Cioppa, a District Director of USCIS (together, "Defendants"), alleging that Defendants have failed to adjudicate Plaintiff's asylum application within a reasonable period of time.[1] In consequence, Plaintiff brings claims under the Administrative Procedure Act

---

[1] If this case were to continue against Defendants L. Francis Cissna and Kirstjen Nielsen, the current Acting Director of United States Citizenship and Immigration Services, Ken Cuccinelli, and the current Acting Secretary of the United States Department of Homeland Security, Chad Wolf, would have been substituted for them. *See* Fed. R. Civ. P. 25(d) (providing for automatic substitution of public officer with successor).

(the "APA"), *codified in relevant part at* 5 U.S.C. §§ 555(b), 706(2)(A), 8706(1);

the Mandamus Act, 28 U.S.C. § 1361; the Immigration and Nationality Act (the

"INA"), 8 U.S.C. § 1158(d); the Declaratory Judgment Act, 28 U.S.C. § 2201;

and the Fifth Amendment to the United States Constitution. Plaintiff requests,

*inter alia*, that this Court (i) declare that Defendants' failure to adjudicate her

asylum application violates statutory and constitutional law; and (ii) compel

Defendants to take all appropriate actions to adjudicate Plaintiff's asylum

application without further delay.

Pending before the Court is Defendants' motion to dismiss Plaintiff's

Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure. In resolving this motion, the Court in no way minimizes Plaintiff's

concerns about the Defendants' protracted review of her asylum application or

her interest in having that application adjudicated in a timely manner. Put

somewhat differently, while the Court is constrained to accept many of

Defendants' legal arguments, it does not find Defendants' proffered

explanations for the delay in processing Plaintiff's application to be wholly

satisfactory. That said, for the reasons that follow, Defendants' motion to

dismiss is granted in full.

## BACKGROUND

### A.    Statutory Background

The INA permits any alien "who is physically present in the United States

or who arrives in the United States … irrespective of such alien's status," to

apply for asylum in this country, subject to certain exceptions not relevant

here.  8 U.S.C. § 1158(a)(1), (2).  The Secretary of Homeland Security or the Attorney General "may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General ... if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of [Title 8]."  *Id.* § 1158(b)(1)(A).  The INA, in turn, sets forth procedures that direct the Government to conduct an initial interview of an asylum applicant within 45 days of the filing of an application and to complete administrative adjudication of the application within 180 days of the filing of the application.  *Id.* § 1158(d)(5)(A)(ii), (iii).  However, § 1158(d)(7) — entitled "No private right of action" — expressly provides that "[n]othing in [§ 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  *Id.* § 1158(d)(7).

**B.    Factual Background**[2]

Plaintiff, a citizen of the People's Republic of China, came to the United States and applied for asylum.  (Compl. ¶ 13).  Plaintiff's application was received by USCIS on December 29, 2015.  (*Id.* at ¶ 14).  Plaintiff received a letter from USCIS, requesting that she have her biometrics taken by USCIS between January 1 and 15, 2016.  (*Id.* at ¶ 15).  As of the filing of this suit,

---

[2]    For ease of reference, Plaintiff's Complaint is referred to as "Complaint" or "Compl." (Dkt. #1); Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #19); Plaintiff's memorandum of law in opposition to the motion as "Pl. Opp." (Dkt. #20); and Defendants' reply memorandum as "Def. Reply" (Dkt. #21).

more than three years after Plaintiff had filed her application for asylum, USCIS's case status website listed Plaintiff's application as "still pending." (*Id.* at ¶¶ 16, 18). The Court takes judicial notice of the fact that, since the filing of the Complaint, Plaintiff's application status has changed from "pending" (*id.*, Ex. C), to waiting for an interview to be scheduled. *See* Case Status Online, egov.uscis.gov/casestatus/landing.do (last visited January 14, 2020).

According to Plaintiff, Defendants have all the information required to resolve her application, but have failed to do so. (Compl. ¶ 19). More pointedly, Plaintiff complains that Defendants' delay in addressing Plaintiff's application is caused in part by USCIS's adoption of a "last in, first out" rule in adjudicating asylum applications, whereby the most recently filed applications will be addressed by USCIS first. (*Id.* at ¶ 21, Ex. E).

## C.     Procedural Background

Plaintiff filed her Complaint on March 22, 2019. (Dkt. #1). On May 31, 2019, Defendants filed a letter motion seeking leave to file a motion to dismiss the Complaint in its entirety. (Dkt. #12). The Court granted Defendants leave to file their motion to dismiss on June 4, 2019. (Dkt. #13). Defendants filed their motion to dismiss and supporting papers on June 27, 2019. (Dkt. #17, 18, 19). Plaintiff filed an opposition brief on July 25, 2019. (Dkt. #19). This motion became fully briefed when Defendants filed their reply brief on August 1, 2019. (Dkt. #21).

**DISCUSSION**

**A.     Applicable Law**

**1.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions. *See Carter* v. *HealthPort Technologies, LLC,* 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction. *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks and citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Carter*, 822 F.3d at 57; *see also MMA Consultants 1, Inc.* v. *Rep. of Peru*, 719 F. App'x 47, 49 (2d Cir. 2017) (summary order) (defining fact-based Rule 12(b)(1) motion as one where "the defendant puts forward evidence to challenge the factual contentions underlying the plaintiff's assertion of subject-matter jurisdiction"). "In opposition to such a motion, [plaintiffs] must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (internal citations and quotations omitted). If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction." *Carter*, 822 F.3d at 57.

### 2.  Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to

6

dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." (internal quotation marks

omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S.

544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.

2007) ("While *Twombly* does not require heightened fact pleading of specifics, it

does require enough facts to nudge plaintiff's claims across the line from

conceivable to plausible." (internal quotation marks and alterations omitted)).[3]

"Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and

---

[3]  Correlative to the Rule 12(b)(6) analysis is the issue of the documents a court may consider in resolving such a motion.  The Second Circuit has instructed that "on a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and alterations omitted) (quoting *Brass* v. *Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Id.* (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

With their motion papers, Defendants include a declaration that they claim is "integral" to the Complaint because it provides additional background information on relevant statutes and regulations, and on the processing of asylum applications.  (Def. Br. 3 n.2; Declaration of John Lafferty ("Lafferty Decl." (Dkt. #18)))  The Court does not believe that this declaration is, in fact, integral to Plaintiff's Complaint, and does not consider it in deciding Defendants' motion to dismiss.  *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough. 'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason — usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim — was not attached to the complaint.'" (internal citations omitted)).  However, the dispute is largely academic, as Plaintiff has included a USCIS announcement as an exhibit to her Complaint that adverts to several of the issues discussed in the Lafferty Declaration. (*See* Compl., Ex. E).

plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*

**B.     Analysis**

Defendants argue that the Court should dismiss each of Plaintiff's

claims, because either the Court lacks subject matter jurisdiction over the

claim or Plaintiff has failed to state a claim for relief. The Court recognizes that

where a movant advances claims under both Rule 12(b)(1) and Rule 12(b)(2), it

is preferable to address the former claims first, as the absence of subject

matter jurisdiction generally moots the need to discuss the adequacy of the

pleadings. However, in this case, the Court's analysis of Plaintiff's APA claims

informs its analysis of the remainder of Plaintiff's claims, and thus the Court

begins with those claims, which implicate defense arguments under both rules.

As set forth in the remainder of this Opinion, the Court considers, but

ultimately dismisses, each of Plaintiff's claims.

**1.     Plaintiff Fails to State a Claim Under the APA**

The APA provides for judicial review of an agency action that is either not

completed "within a reasonable time," or is "unreasonably delayed." 5 U.S.C.

§§ 555(b), 706(1). "However, the judicial review provisions of the APA do not

apply 'to the extent that ... statutes preclude judicial review.'" *Shabaj* v.

*Holder*, 718 F.3d 48, 52 (2d Cir. 2013) (per curiam). "In determining

reasonableness, we look to the source of delay — *e.g.*, the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Reddy* v. *CFTC*, 191 F.3d 109, 120 (2d Cir. 1999). Courts also regularly apply the six factors set forth in *Telecommunications Research and Action Center* v. *FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*," and the "TRAC factors"), which are: (i) the time agencies take to make decisions must be governed by a rule of reason; (ii) where Congress has provided a timetable, it may supply content for this rule of reason; (iii) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (iv) the effect of expediting delayed action on agency activities of a higher or competing priority; (v) the nature and extent of the interests prejudiced by delay; and (vi) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. *See, e.g.*, *L.M.* v. *Johnson*, 150 F. Supp. 3d 202, 206-07, 213-14 (E.D.N.Y. 2015); *States of New York* v. *Dep't of Justice*, 343 F. Supp. 3d 213, 242 (S.D.N.Y. 2018); *Boussana* v. *Johnson*, No. 14 Civ. 3757 (LGS), 2015 WL 3651329, at *8 (S.D.N.Y. June 11, 2015).

Plaintiff claims that Defendants' delay in adjudicating her application is so unreasonable as to violate the APA. (Compl. ¶¶ 27-29). Defendants move to dismiss this claim, arguing first that the Court lacks subject matter jurisdiction over it because the INA expressly precludes judicial review, and alternatively that Plaintiff has failed to state a claim because the delay in

adjudication is not unreasonable. (Def. Br. 15-20). The Court is not convinced by Defendants' first argument, but grants dismissal based on the second.

### a. The Court Has Subject Matter Jurisdiction over Plaintiff's APA Claim

Under clearly established Second Circuit precedent, the Court would lack jurisdiction over Plaintiff's APA claim if another statute precluded judicial review. *See Shabaj*, 718 F.3d at 52. Defendants argue that 8 U.S.C. § 1158(d) of the INA precludes judicial review of the timeliness of asylum adjudications. The Court disagrees.

To be sure, § 1158(d) directs governmental agencies to process asylum applications within certain time frames: "in the absence of exceptional circumstances," the initial interview or hearing on an asylum application shall occur within 45 days of it being filed, and the final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days of it being filed. 8 U.S.C. § 1158(d)(5)(A)(ii), (iii). At the same time, § 1158(d) includes a provision entitled "No private right of action," which states: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.* § 1158(d)(7).

Where Defendants and the Court part company is on the legal significance of the two provisions. As explored in greater detail below, the Court concludes that these provisions make plain that Plaintiff has no statutory right to sue Defendants based upon their failure to adjudicate her

asylum claim within the time frame laid out in § 1158(d); the Court would lack subject matter jurisdiction over such a claim. *See Takamiya* v. *DNP America, LLC*, No. 14 Civ. 10301 (VEC), 2016 WL 4030861, at *3 (S.D.N.Y. July 25, 2016) ("A federal statute that does not create or imply a private right of action does not present a federal question pursuant to 28 U.S.C. § 1331 and 'mandates a finding that the court lacks subject matter jurisdiction over the claim.'" (quoting *Biran* v. *JP Morgan Chase & Co.*, No. 02 Civ. 5506 (SHS), 2002 WL 31040345, at *3 (S.D.N.Y. Sept. 12, 2002))). For the same reason, the Court would lack subject matter jurisdiction over an APA claim premised on an agency's failure to abide by § 1158(d)'s timing directives.

Significantly, however, Plaintiff's APA claim does not concern Defendants' obligation to abide by § 1158(d). Instead, Plaintiff alleges that Defendants have failed to comply with the much more general requirements set forth in the APA itself: that agency actions must be completed within a reasonable time and not be unreasonably delayed. 5 U.S.C. §§ 555(b), 706(1). Plaintiff's right to adjudication within a reasonable time exists independently of § 1158(d), and the Court concludes that § 1158(d)(7) is not so broad as to strip Plaintiff of her right to challenge all delays in the adjudication of her asylum application, no matter how egregious.[4]

---

[4]    In so finding, the Court aligns itself with the weight of authority on the subject. *See, e.g.*, *Pesantez* v. *Johnson*, No. 15 Civ. 1155 (BMC), 2015 WL 5475655, at *5 (E.D.N.Y. Sept. 17, 2015) ("I do not hold that the APA is inapplicable to the instant case, nor that it would be possible to so delay adjudication as to create an 'unreasonable' delay in violation of that statute. Nor does my resolution of the instant motions require the conclusion that USCIS enjoys 'unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely.'" (quoting *Kim* v. *Ashcroft*, 340 F.

### b.    Plaintiff Has Failed to State a Claim Under the APA

Having found jurisdiction over Plaintiff's APA claim, the Court turns to Plaintiff's pleadings to determine if she has plausibly alleged that Defendants' delay in adjudicating her asylum application is unreasonable under the APA. And though the Court empathizes with Plaintiff, it concludes that she has not.

"The Supreme Court has held that evidence of the passage of time cannot, standing alone, support [a claim for unreasonably delayed administrative action]." *Espin* v. *Gantner*, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing *INS* v. *Miranda*, 459 U.S. 14, 19 (1982)).  Rather, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wamponoag Tribal Council, Inc.* v. *Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  To guide its analysis in determining reasonableness, the Court looks both to the "source of the delay — *e.g.*, the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding," *Reddy*, 191 F.3d at 120 — and each of the TRAC factors, *TRAC*, 750 F.2d at 80.

Plaintiff alleges that the delay in adjudication was caused in part by USCIS's adoption of the LIFO rule to govern the adjudication of asylum applications.  (Compl. ¶ 21).  The LIFO rule was adopted on January 31, 2018, and provides that USCIS "will schedule asylum interviews for recent

Supp. 2d 384, 393 (S.D.N.Y. 2004))); *see also L.M.* v. *Johnson*, 150 F. Supp. 3d 202, 209-11 (E.D.N.Y. 2015) (agreeing in relevant part).

applications ahead of older filings." (*Id.* at Ex. E). As a result of the LIFO rule, applicants like Plaintiff who had submitted their applications earlier in time would not have their applications adjudicated first.

The policy was enacted "in an attempt to stem the growth of the agency's asylum backlog," which left the asylum system "increasingly vulnerable to fraud and abuse." (Compl., Ex. E). The backlog was itself caused, at least in part, by a tripling of the rate of new asylum applications filed in the preceding five years. (*Id.*). In light of these facts, the Court concludes that the delayed adjudication of Plaintiff's application was caused by neither side's lack of diligence. Rather, the delay was the result of the LIFO rule, which was itself a reasoned response to a systemic crisis.

The first TRAC factor directs courts to examine whether "the time agencies take to make decisions" is governed by a "rule of reason." *TRAC*, 750 F.2d at 80. Here, USCIS employs the LIFO rule to guide it in the adjudication of asylum applications. For the reasons discussed above, the Court finds that the LIFO rule constitutes a rule of reason that satisfies the first TRAC factor. *See Zhu* v. *Cissna*, No. 18 Civ. 9698 (JRPx), 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (finding that the LIFO rule "sets forth a 'rule of reason' for the adjudication of asylum applications"). Plaintiff argues that the LIFO rule deliberately causes delays in the timely processing of asylum applications that are detrimental to the system, and thus cannot be a reasonable rule. (Pl. Opp. 5-6). But Plaintiff misunderstands the LIFO rule, the purpose of which is to address the mounting backlog of pending asylum applications, not to create

further delays. It is true that the LIFO rule forces asylum applicants who filed earlier to bear the brunt of those delays. But this is a byproduct of a reasoned attempt to address mounting issues with the asylum application process. (*See* Compl., Ex. E).

The second TRAC factor asks if Congress has provided a timetable that could supply content for the rule of reason. *TRAC*, 750 F.2d at 80. And Congress has provided just such a timetable for asylum adjudications in § 1158(d). This timetable, however, is not mandatory: Congress stated that it did not create any substantive or procedural right to adjudication within any time period. 8 U.S.C. § 1158(d)(7). Thus, the Court does not ascribe much significance to this timetable.

Under the third and fifth TRAC factors, the Court looks to the nature and extent of the interests prejudiced by the delayed adjudication. *TRAC*, 750 F.2d at 80. Plaintiff has generally asserted that she is suffering "significant harm" and that she is not "receiving the full rights, privileges and benefits that she is entitled to as a seeker of asylum who has a meritorious claim." (Compl. ¶¶ 22, 23). But this sort of prejudice is inherent in the asylum application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved. *See Zhu*, 2019 WL 3064458, at *4 (stating that an applicant's inability to plan her future or travel outside of the United States constituted risk that was "inherent in the process of seeking asylum"). Notably, Plaintiff does not allege facts establishing a risk to human health and

welfare.[5]  The Court also takes notice of the fact that Plaintiff is permitted to

live in the United States without fear of being removed to her home country

while her application is pending, and can even apply for employment

authorization during the pendency of her application.  8 U.S.C. § 1158(d)(2); 8

C.F.R. § 208.7(a).

Finally, the Court examines the fourth TRAC factor: "the effect of

expediting delayed action on agency activities of a higher or competing

priority."  *TRAC*, 750 F.2d at 80.  Defendants argue that the effect of expediting

action as to Plaintiff's application would be to move her to the front of a line of

"thousands of other[] [applications], many of which involve applicants who have

been waiting longer than the plaintiff for their interviews."  (Def. Br. 7).  The

Court agrees.  "[A] judicial order putting [Plaintiff] at the head of the queue

would simply move all others back one space and produce no net gain."  *L.M.*,

150 F. Supp. 3d at 213 (quoting *Mashpee Wampanoag Tribal Council, Inc.*, 336

F.3d at 1100) (finding petitioner failed to state a claim for relief under the APA).

---

[5]    In her opposition brief, Plaintiff argues that asylum seekers "may well have family
member(s) back in their country of nationality whose lives may depend on their relative
obtaining asylum in the United States," and that studies show that asylum seekers with
lengthy case processing times "are at an increased risk of suffering from psychiatric
disorders." (Pl. Opp. 7).  The Court does not quarrel with the veracity of these
statements, and understands the gravity of asylum protections both for an applicant
and, potentially, for that applicant's family.  Here, however, Plaintiff's Complaint does
not include any allegations that she is suffering from psychiatric disorders as a result of
the delay, or that she has any family members in China whose lives may depend on her
obtaining asylum in a timely manner.  In the absence of such pleaded facts, Plaintiff's
arguments in her opposition brief are insufficient to state a claim for relief.  *See Zhu* v.
*Cissna*, No. 18 Civ. 9698 (JRPx), 2019 WL 3064458, at *4 n.5 (C.D. Cal. Apr. 22, 2019)
(finding that an asylum applicant's allegations that, because of delayed adjudication of
her application, she had been unable to draw upon public benefits, unable to proceed
with the process of getting her family to the United States, and had experienced
psychological damage were insufficient to allege cognizable prejudice).

The D.C. Circuit has held that it is appropriate to deny relief based on the reasonableness of administrative delay where granting such relief would produce such an inequity, even where "all the other factors considered in TRAC" suggest that a delay was unreasonable. *See Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100; *see also Pesantez* v. *Johnson*, No. 15 Civ. 1155 (BMC), 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) ("the facts of this case do not counsel in favor of a remedy that would, if it did anything, move plaintiff's application to the front of the line at the expense of other applicants whom she has not alleged are less deserving of prompt adjudication"); *Xu* v. *Nielsen*, No. 18 Civ. 2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit."). This Court concurs. The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication.

The Court concludes that granting Plaintiff her requested relief would have two other undesirable effects. *First*, it would undermine USCIS's ability to achieve the goal that motivated it to adopt the LIFO rule — specifically, to address the surge in newly-filed asylum applications that could leave the asylum system "increasingly vulnerable to fraud and abuse." (Compl., Ex. E). And *second*, granting relief to Plaintiff, an asylum petitioner who engaged the

help of legal counsel to bring this suit, might have the perverse effect of "incentiviz[ing] defendants to prioritize those asylum applicants who have the wherewithal to retain private counsel and to bring suit in District Court." *Pesantez*, 2015 WL 5475655, at *4.

Having considered the TRAC factors, as well as the cause of the delayed adjudication, the Court concludes that Plaintiff has failed to state a claim under the APA that the adjudication is unreasonably delayed or has not been adjudicated in a reasonable time. *See* 5 U.S.C. §§ 555(b), 706(1). In so doing, the Court notes that the three-year period of delay between the filing of Plaintiff's application and the instant Complaint, while not insubstantial, is well within the range of time that other courts have found to not constitute unreasonable delay. *See, e.g.*, *Saleh* v. *Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding that five-year delay in adjudication of asylum application was not an unreasonable delay); *Espin*, 381 F. Supp. 2d at 266 (concluding that plaintiff failed to state a claim for unreasonable delay where adjustment application had been pending for three years); *Xu*, 2018 WL 2451202, at *2 (concluding that plaintiff failed to state a claim for unreasonable delay where asylum application had been pending for a little less than five years); *Boussana*, 2015 WL 3651329, at *8 ("Although 'courts have generally found delays of four years or less not to be unreasonable[,] ... many courts applying the TRAC factors have declined to find that delays exceeding six years are reasonable.'" (quoting *Islam* v. *Heinauer*, 32 F. Supp. 3d 1063,

1071-72 (N.D. Cal. 2014))).  Defendants' motion to dismiss Plaintiff's APA claim is granted.

### 2. The Court Lacks Subject Matter Jurisdiction over Plaintiff's Mandamus Claim

Pursuant to 28 U.S.C. § 1361, Plaintiff also seeks to compel Defendants to discharge their "mandatory duty to administer and enforce the [INA]" and adjudicate her asylum application "without undue delay."  (Compl. ¶¶ 30-33). Defendants argue that the Court lacks jurisdiction over this mandamus claim. (Def. Br. 11-14).  In this instance, they are correct.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  "The action that the plaintiff seeks to compel must be subject to positive command, plainly described, and free from doubt." *Keane* v. *Chertoff*, 419 F. Supp. 2d 597, 599 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).  To obtain relief, a plaintiff must show that "[i] there is a clear right to the relief sought; [ii] the Government has a plainly defined and peremptory duty to perform the act in question; and [iii] there is no other adequate remedy available."  *Benzman* v. *Whitman*, 523 F.3d 119, 133 (2d Cir. 2008).

Plaintiff claims that she has a "clear right to the relief requested, namely that the [] application be adjudicated by the agency without undue delay." (Compl. ¶ 31).  But while the Complaint is clear in what it seeks, *viz.*, a writ of mandamus requiring Defendants to adjudicate Plaintiff's asylum application

immediately, it is less clear what right Plaintiff invokes in seeking such relief. The Court surmises that Plaintiff may believe she is entitled to mandamus relief for one of two reasons: (i) Defendants failed to adjudicate her application in a reasonably timely manner, as required by the APA, *see* 5 U.S.C. §§ 555(b), 706(1); or (ii) Defendants failed to adjudicate her application within the time frame set forth by Congress in 8 U.S.C. § 1158(d)(5)(A)(ii) and (iii).

In her opposition brief, Plaintiff argues that she is not seeking to enforce the specific time frames outlined in 8 U.S.C. § 1158(d), but rather is asking the Court to compel "Defendants and those acting under them to simply adjudicate Plaintiff's [application], and that they do so without further delay." (Pl. Opp. 2). Plaintiff does not cite to a specific statute that she believes entitles her to a right to immediate adjudication. The most natural reading of her argument leads the Court to understand that Plaintiff seeks mandamus relief based on Defendants' supposedly unreasonable delay, in ostensible violation of the APA. If this were Plaintiff's intent, her mandamus claim would fail for two reasons. *First*, an alternative adequate remedy would be possible under the APA, so no mandamus claim would be necessary. *See Sharkey* v. *Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (holding that a mandamus claim should be dismissed where it duplicated claims brought under the APA). And *second*, as the Court has already determined, Plaintiff has failed to establish that the delay in question violates the APA's prescriptions that review be completed in a reasonable time frame.

In the interests of thoroughness, the Court also analyzes Plaintiff's mandamus claim as if she were seeking relief based upon Defendants' failure to adjudicate her application within the timetable described in §§ 1158(d)(5)(A)(ii) and (iii) of the INA. The Court joins the chorus of other courts across the country in concluding that § 1158(d)(7) of the INA bars Plaintiff "from claiming any legally enforceable right to have [her] application[] adjudicated within the provided timeframes." *L.M.*, 150 F. Supp. 3d at 209-11; *see also, e.g.*, *Pesantez*, 2015 WL 5475655, at *2-3; *Zhu,* 2019 WL 3064458, at *3; *Gjeluci* v. *Chertoff*, No. 05 Civ. 72451 (GCS), 2005 WL 1801989, at *1 (E.D. Mich. July 25, 2005).[6]

"It is beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action." *Pesantez*, 2015 WL 5475655, at *2. Indeed, § 1361 provides the Court with jurisdiction over mandamus actions only where the plaintiff seeks to compel an agent of the United States "to perform a duty *owed to the plaintiff*." 28 U.S.C. § 1361 (emphasis added). The Second Circuit has extrapolated from this that a writ of mandamus may issue only where the petitioner proves that there is a "clear right to the relief sought." *Benzman*, 523 F.3d at 133. Because § 1158(d)

---

[6] Certain courts that have addressed similar mandamus claims arising out of delayed adjudications of asylum applications have dismissed them pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, while others have dismissed them pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff has failed to identify any instance in which a comparable claim for mandamus relief has survived a motion to dismiss, and the Court's independent research has identified none.

expressly does not create a legally enforceable right or benefit against any officer of the United States or any agency, Defendants do not owe Plaintiff a duty to adjudicate her application within the time frames provided in § 1158(d). *See L.M.*, 150 F. Supp. 3d at 209. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claim for mandamus relief. *See H.M.G.* v. *Johnson*, 599 F. App'x 396, 397 (2d Cir. 2015) (summary order) (affirming dismissal of mandamus claim for lack of subject matter jurisdiction where petitioner had "identified neither a clear right to relief nor a 'plainly defined and peremptory duty' on the part of the federal agency respondents").

### 3. The Court Lacks Subject Matter Jurisdiction over Plaintiff's INA Claim

Next, Plaintiff brings a standalone claim under § 1158(d) of the INA, alleging that she is entitled to relief because Defendants did not adjudicate her application within 180 days after the application was filed. (Compl. ¶¶ 34-39). The Court easily finds that it lacks subject matter jurisdiction over this claim for two reasons. *First*, § 1158(d)(7) expressly states that the statute does not provide asylum applicants with a right to have their application resolved within the delineated time frame. 8 U.S.C. § 1158(d)(7). Thus, as stated above, Plaintiff does not have a private right of action to bring a claim under § 1158(d). *Takamiya*, 2016 WL 4030861, at *3 ("A federal statute that does not create or imply a private right of action does not present a federal question pursuant to 28 U.S.C. § 1331 and mandates a finding that the court lacks subject matter jurisdiction over the claim." (internal quotation marks and citation omitted)).

21

*Second*, Plaintiff's claim against Defendants, officers of the United States named in their official capacity, requires the Court to consider the doctrine of sovereign immunity. "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block* v. *North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U.S. 273, 287 (1983). And "[t]he waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction[.]" *Presidential Gardens Assocs.* v. *U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999) (citing *United States* v. *Mitchell*, 463 U.S. 206, 212 (1983)). Plaintiff has not identified any relevant provision of the INA by which Congress waived its immunity to suits concerning the timeliness of asylum application adjudications under § 1158(d). Quite to the contrary, § 1158(d)(7) expressly disclaims Plaintiff's right to bring a suit arising out of that statute against the federal government or its agents. For these reasons, the Court lacks subject matter jurisdiction over Plaintiff's INA claim.

### 4. Plaintiff Fails to State a Claim Under the Fifth Amendment to the Constitution

The Complaint contains two claims brought under the Fifth Amendment: (i) Defendants violated Plaintiff's right to due process and (ii) Defendants violated Plaintiff's right to equal protection under the law. (Compl. ¶¶ 42-45). The Court concludes that neither states a valid claim for relief.

### a. Plaintiff Has Not Alleged a Due Process Violation

Aliens within the country "are entitled to due process" and "must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner." *Burger* v. *Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007) (internal

citations and quotation marks omitted).  "Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process."  *Garcia-Villega* v. *Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (internal citation and quotation marks omitted).

The Second Circuit considered the propriety of due process claims premised upon delayed adjudication in the immigration context, albeit in a non-precedential decision, in *Arostegui* v. *Holder*, 368 F. App'x 169, 171-72 (2d Cir. 2010) (summary order).  There, the plaintiff claimed that the Department of Homeland Security had violated his right to due process by failing to initiate removal proceedings against him for nearly five years after his return to the United States.  *Id.* at 172.  The Second Circuit held that the plaintiff's mere assertions that the delay had "violated his due process rights" were insubstantial and frivolous, and failed to raise a constitutional question.  *Id.* The same is true here.  Plaintiff's single allegation in support of her due process claim is conclusory, and nearly identical to the allegation found to be wanting in *Arostegui*:  Plaintiff claims that "[b]ecause of the delay by the Defendants in adjudicating her asylum application, she has suffered a violation of her due process rights."  (Compl. ¶ 44).  This is insufficient to state a claim for a due process violation.  Further, § 1158(d)(7) expressly does not create a substantive or procedural right that might have been violated by the delay at issue.  *See* 8 U.S.C. § 1158(d)(7).

In Plaintiff's opposition brief, she provides additional color for her due process claim.  She once again claims that she is not premising her claim upon

Defendants' failure to abide by the adjudication time frame provided in § 1158(d). Instead, Plaintiff claims that she "asserts the broader obligation of [Defendants] to adjudicate her asylum application." (Pl. Opp. 10). But Plaintiff does not allege that Defendants have refused to adjudicate her application; she merely takes issue with their failure to do so within a time frame she believes to be reasonable. Courts have found that comparable and even greater delays in adjudication in the immigration context have not resulted in due process violations. *See, e.g., Vang* v. *Gonzales*, 237 F. App'x 24, 31-32 (6th Cir. 2007) (unpublished decision) (finding fourteen-year delay in completing asylum adjudication did not violate due process); *Mudric* v. *Attorney Gen. of U.S.*, 469 F.3d 94, 98-99 (3d Cir. 2006) (finding no due process violation for four-year delay in processing asylum application because "federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible"); *L.M.*, 150 F. Supp. 3d at 216-17 (finding two-year delay in adjudication proceedings did not violate due process).

Even if Plaintiff had a right to have her asylum application adjudicated within a specific time frame, her due process claim would fail because she fails adequately to allege that she suffered prejudice. On this point, the Court is guided by the analysis provided in *Arostegui*, where the Second Circuit held that even if it could consider the plaintiff's due process claim, it would fail because the plaintiff had failed to allege that the delay resulted in prejudice. *Arostegui*, 368 F. App'x at 172 (citing *Garcia-Villega*, 531 F.3d at 149). The

delay in that plaintiff's removal allowed him to remain in the country for an additional five years, and the court rejected an argument that the delay made it difficult for the plaintiff to arrange his affairs as being "too tenuous to be persuasive." *Id.*

The Court pauses to acknowledge that an asylum application is different in kind from a removal proceeding. While the latter forces an individual out of the country against his wishes, the former may grant refuge to an individual who wishes to stay. Thus, an asylum applicant may be prejudiced by delayed adjudication in ways that an individual facing removal could not. Here, however, Plaintiff failed to allege prejudice with any specificity; she claims only that she is not receiving the full rights, privileges, and benefits that she might receive if her application were granted. Such prejudice is too speculative to state a claim for denial of due process.

For both of these reasons, the Court concludes that Plaintiff has failed to allege that Defendants violated her right to due process.

### b.       Plaintiff Has Not Alleged an Equal Protection Violation

Plaintiff also asserts a violation of her right to equal protection. It is true that equal protection guarantees extend to immigrants, *see Domond* v. *INS*, 244 F.3d 81, 87 (2d Cir. 2001), but Plaintiff's pleadings in support of this claim are paradigmatically conclusory. Plaintiff alleges only that "Defendants' practices, policies, conduct, and/or failures to act as alleged in this Complaint violate the plaintiff's right to ... equal protection of law." (Compl. ¶ 43). Plaintiff makes no effort to explain how her equal protection rights have been violated, or even to

identify the class of individuals in relation to whom she claims she has been treated differently. The Complaint supplies the Court with only the legal conclusion that Plaintiff's equal protection rights were violated, which is insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In her opposition brief, Plaintiff again provides additional details about the claim that she had hoped to bring, namely, that she believes Defendants' use of the LIFO rule to prioritize certain asylum applications over her own has violated her equal protection rights. (Pl. Opp. 11-12). Plaintiff claims that she has been treated differently than other categories of aliens, who, having applied for asylum more recently, will have their applications adjudicated more quickly. (*Id.*). But because Plaintiff is counseled in this matter, the Court may not accept the allegations in her brief as supplementing her pleadings. *See Colon* v. *City of N.Y.*, No. 16 Civ. 6245 (KPF), 2018 WL 740992, at *3 (S.D.N.Y. Feb. 6, 2018) ("Generally speaking, when presented with materials outside the pleadings in counseled cases, a court must either exclude the materials from its review or convert the motion to one for summary judgment under Rule 56 and give the parties an opportunity to conduct discovery and to present additional materials for the court's consideration.").

Even if the Court were to consider these arguments as supplements to the pleadings, Plaintiff's equal protection claim would fail. "Distinctions between different groups of aliens are subject to rational basis review." *Domond*, 244 F.3d at 87. In order to state a claim, Plaintiff must plausibly allege that she has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook* v. *Olech*, 528 U.S. 562, 564 (2000). "When a statute or regulatory regime imposes different classifications or regulatory burdens on groups of regulated participants, rational basis review contemplates 'a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negate every conceivable basis which might support it.'" *Progressive Credit Union* v. *City of N.Y.*, 889 F.3d 40, 49 (2d Cir. 2018) (quoting *F.C.C.* v. *Beach Commc'ns*, 508 U.S. 307, 314-15 (1993)). As the Second Circuit noted:

> To withstand a motion to dismiss such a claim, a plaintiff must plead sufficient facts that, treated as true, overcome the presumption of rationality that applies to government classifications. A court is not confined to the particular rational or irrational purposes that may have been raised in the pleadings. *Johnson* v. *Baker*, 108 F.3d 10, 11-12 (2d Cir. 1997) (noting that equal protection rational basis review is appropriate in a motion to dismiss at the pleadings stage and that the court may hypothesize a legitimate, rational governmental purpose); *see also Mahone* v. *Addicks Utility Dist.*, 836 F.2d 921, 936 (5th Cir. 1988) ("Going outside the complaint to hypothesize a purpose will not conflict with the requirement that, when reviewing a complaint dismissed under Rule 12(b)(6), we accept as true all well-pleaded facts.").

*Progressive Credit Union*, 889 F.3d at 49-50.  The complaint fails to meet these "exacting standards" because a rational basis exists for the classifications created by the LIFO rule.  *Id.*

According to the exhibit Plaintiff attaches to her Complaint, the LIFO rule was instituted to address the rapidly increasing backlog of pending asylum cases and make the asylum system less vulnerable to fraud and abuse. (Compl., Ex. E).  As Defendants further explain in their moving papers, the LIFO rule "discourage[s] frivolous, fraudulent, or otherwise meritless asylum application[s] filed solely to obtain work authorization."  (Def. Br. 8).  Plaintiff has not alleged facts that would overcome the rationality of this choice.

Plaintiff argues that the LIFO system will cause harm to certain asylum applicants, like her, who will have to wait longer to have their applications adjudicated.  (Pl. Opp. 11-12).  She further argues that this unfortunate byproduct of the LIFO rule is so detrimental that the LIFO rule itself may never be rational.  (*Id.*).  The Court disagrees.  Affording the LIFO rule a strong presumption of validity, USCIS's choice to discourage frivolous asylum applications was not without rationality.  The swell in asylum applications had produced a rapidly increasing backlog of asylum applications and left the asylum system prone to fraud, giving Defendants a reason to adopt the LIFO rule even at the risk of delaying the adjudications of certain asylum applications.  Because Plaintiff has failed to negate the rational basis motivating Defendants' and USCIS's classification decisions, her equal protection claim must fail.

**5.    The Court Lacks Subject Matter Jurisdiction over Plaintiff's Declaratory Judgment Act Claim**

Finally, Plaintiff seeks a declaration pursuant to the Declaratory Judgment Act that Defendants violated the INA, breached their statutory duties, and violated the Constitution.  (Compl. ¶¶ 40-41).  But the "Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts."  *Correspondent Servs. Corp.* v. *First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (citing 28 U.S.C. § 2201(a)).  For the Court to issue a declaratory judgment, some other independent basis of jurisdiction must exist.  (*Id.*).  For the reasons stated above, none of Plaintiff's other claims will survive the pending motion to dismiss.  Thus, the Court lacks an independent basis for jurisdiction and lacks subject matter jurisdiction over Plaintiff's declaratory judgment claim.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:       January 16, 2020
             New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge